<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANCIS GUERRA, | : | |
| | : | Civil Action No. 06-81 (JBS) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

      FRANCIS GUERRA, Petitioner <u>pro se</u>
      #10636-051
      F.C.I. Fort Dix
      P.O. Box 2000
      Fort Dix, New Jersey  08640

      CHRISTOPHER J. CHRISTIE, United States Attorney
      J. ANDREW RUYMANN, Assistant U.S. Attorney
      402 East State Street, Room 430
      Trenton, New Jersey  08608
      Attorneys for Respondents

**SIMANDLE**, District Judge:

      Petitioner Francis Guerra, a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The named respondents are the Federal Bureau of Prisons, Charles Samuels, Warden at FCI Fort Dix, and Harley Lappin, Director.

## I.   BACKGROUND

On September 15, 2000, petitioner Francis Guerra ("Guerra") was sentenced to an aggregate 87-month prison term, by the United States District Court for the Southern District of New York pursuant to his conviction on two counts of using a communication facility in committing felony narcotics offenses, in violation of 21 U.S.C. § 843(b).  Guerra's statutory projected release date is December 25, 2006, with earned and projected good conduct time credits.

In his petition, Guerra asserts that, on December 9, 2005, the Federal Bureau of Prisons ("BOP") informed petitioner that his offense was classified as a "crime of violence", which would exclude petitioner from the 10% community corrections center ("CCC") placement pursuant to 18 U.S.C. § 3624(c) and 28 C.F.R. § 570.21(a).  Guerra sought administrative review of the BOP's decision on the grounds that the offense was nonviolent and that the BOP's acts were arbitrary and capricious, and violated BOP policies and regulations and due process.  Guerra did not fully exhaust his administrative remedies on the grounds that it would have been futile.  He asserts that his CCC 10% eligibility release date is June 25, 2006.

The BOP initially determined that Guerra is eligible for CCC placement.  However, because of the "violent offender"

classification, the BOP recommended Guerra for a 60 days placement rather than the 10% date allowed under statute.

Guerra contends that he is entitled to a full 10% CCC placement pursuant.  He alleges that the BOP's action is contrary to statute, violates due process, and is arbitrary and capricious.

The respondents answered the petition on March 13, 2006. The answer and relevant record was filed "under seal" as permitted by this Court's Order filed on March 7, 2006.  The respondents contend that Guerra's CCC placement date was determined consistent with the Third Circuit's directive in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (2005) that the BOP shall consider the factors set forth in 18 U.S.C. § 3621(b).[1]  In particular, the BOP chose to limit Guerra's CCC placement because of the nature and circumstances of Guerra's offense and the history and characteristics of the prisoner, namely, Guerra's association with organized crime and his history of extortion and threatening behavior.  The Unit Team assessing Guerra's CCC placement also found that Guerra did not demonstrate a need for a longer CCC placement based on the fact that he has a release residence established and approved by the U.S. Probation Office, and that Guerra would not be seeking employment due to a

---

[1]  The respondents note that the original CCC determination in December 8, 2005 preceded the Third Circuit's ruling in Woodall, which was issued on December 15, 2005.

3

disability.  Thus, the respondent contends that the BOP exercised
it discretion in considering individual factors in accordance
with 18 U.S.C. § 3621(b).

## II.   RELEVANT STATUTES AND REGULATIONS

Federal law imposes upon the BOP the obligation and
discretion to designate the place of a prisoner's imprisonment,
as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall
> designate the place of the prisoners's imprisonment.
> The Bureau may designate any available penal or
> correctional facility that meets minimum standards of
> health and habitability established by the Bureau,
> whether maintained by the Federal Government or
> otherwise and whether within or without the judicial
> district in which the person was convicted, that the
> Bureau determines to be appropriate and suitable,
> considering -
>
>        (1) the resources of the facility contemplated;
>        (2) the nature and circumstances of the offense;
>        (3) the history and characteristics of the prisoner;
>        (4) any statement by the court that imposed the
> sentence--
>             (A) concerning the purposes for which the
> sentence to imprisonment was determined to be
> warranted; or
>             (B) recommending a type of penal or
> correctional facility as appropriate; and
>        (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to section 994(a)(2) of
> Title 28.
>
> In designating the place of imprisonment or making transfers
> under this subsection, there shall be no favoritism given to
> prisoners of high social or economic status.  The Bureau may
> at any time, having regard for the same matters, direct the
> transfer of a prisoner from one penal or correctional
> facility to another.

18 U.S.C. § 3621(b).

4

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

Recently, in Woodall, the Third Circuit Court of Appeals considered and rejected the validity of BOP regulations that became effective on February 14, 2005, which regulations restricted an inmate's CCC transitional placement to the last 10% of the inmate's sentence.  Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b).  ...  While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.
>
> ...
>
> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered."  We disagree.  ...
>
> ... The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding

5

> where to initially place an inmate, as well as whether
> <u>or</u> <u>not</u> to transfer him.  ...  The congressional intent
> here is clear:  determinations regarding the placement
> scheme-including where a prisoner is held, and when
> transfer is appropriate-must take into consideration
> individualized circumstances.  ...
>
> ...
>
>       In short, we conclude that the § 3621(b) factors
> apply to BOP determinations regarding whether or not
> initial placements or transfers are appropriate.  We
> thus do  not find that the factors are limited by the
> temporal references in § 3624.

<u>Woodall</u>, 432 F.3d at 247, 249-50.

Thus, a prisoner is entitled to an individualized determination as to his pre-release placement based upon the factors identified in § 3621(b).  However, as noted by the Third Circuit, the fact that the BOP <u>may</u> assign a prisoner to a CCC does not mean that it <u>must</u>.

                    III.  <u>ANALYSIS</u>

In response to this petition, the respondent submitted the Declaration of Deanna Mace, dated March 1, 2006, Case Manager at FCI Fort Dix since November 2000, in particular, Case Manager for the petitioner.  (Mace Decl., ¶ 1).  As the Case Manager for Guerra, Ms. Mace reviewed petitioner's file record with respect to the BOP's recommendations for CCC placement. (Mace Decl., ¶ 2).

On December 8, 2005, petitioner's Unit Team made a preliminary recommendation that Guerra should receive 60 days CCC placement.  After Guerra filed this habeas petition, the Unit

                              6

Team redetermined petitioner's CCC placement date pursuant to the December 15, 2005 ruling in <u>Woodall</u>.  The Unit Team recommended that Guerra receive a period of CCC placement commencing between October 23, 2006 through November 22, 2006, a range of 30 to 60 days CCC placement.  (Mace Decl., ¶ 6 and Ex. 5).  Guerra's CCC referral form is still under review.  (<u>Id</u>.).

This Court finds that the Unit Team's recommendation was made with regard to the factors set forth in § 3621(b) and <u>Woodall</u>, without regard to petitioner's ten percent date under § 3624(c).  The Unit Team considered Guerra's demonstrated need, the nature and circumstances of his offense, and the history and characteristics of the petitioner.  Guerra was not excluded from a 10% CCC placement due to his present offense conduct.  Rather, the Unit Team noted that, as to demonstrated need, Guerra already has a release residence approved by the U.S. Parole Office and he will not be seeking employment because he is entitled to receive disability benefits.  Further, based on information from Guerra's presentence report, the Unit Team's recommendation emphasized the violent nature and circumstances of Guerra's offense and the history and characteristics of petitioner, which involved documented threats and extortion, association with an organized crime family, and participation in a narcotics conspiracy and two extortion conspiracies.  (Mace Decl., ¶¶ 3, 6 and Exs. 2, 5).

7

Thus, as demonstrated above, it is clear that the BOP's decision in this regard was within the agency's discretionary authority under § 3621(b), based on its consideration of numerous factors, including Guerra's transitional needs and special supervision concerns.

Further, there is no indication from the facts and circumstances considered in the CCC referral process in this case that Guerra was denied due process.  In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process").  See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

Moreover, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.  Finally, an inmate does not have a constitutional right to a hearing on such transfers. See McKune v. Lile, 536 U.S. 24, 37 (2002).  Thus, it appears that Guerra received all the process he was due in the BOP's discretionary decision as to his transitional CCC placement.  Guerra has indicated no need for transitional placement because he does not intend to seek employment and he has an approved residence upon his release from prison.  Thus, there is no demonstrated need for an earlier release for reintegration into the community based on all the factors considered by the BOP pursuant to 18 U.S.C. § 3621(b).

### III.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  The Bureau of Prisons has acted well within its discretion after considering the factors set forth in 18 U.S.C. § 3621(b) as applied to Petitioner's individual circumstances.  An appropriate order follows.


 s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated:  **March 27, 2006**

9